JAMES, ET AL. VS SMITH, ET AL.

Opinion delivered October 6, 1900.

1. *Pleadings—Complaint—Objections to Sufficiency Waived by Answering.*

    Defendants, after their demurrer to the original complaint was overruled, then moved to require the plaintiffs to make their complaint more definite and certain, and after amendment in this respect, filed their answer. *Held*, that by answering the amended complaint without objection, defendants waived their right to object to its sufficiency, after verdict rendered.

2. *Indian Lands—Ejectment—Sufficiency of Complaint.*

    Where a complaint, in an action of ejectment to recover possession of lands which were part of the Cherokee Nation, reduced to possession by plaintiffs, by reason of their improvements, under the Cherokee laws, alleged these facts and further that defendants lived on the lands by sufferance of plaintiffs and now refused to deliver possession of same, it stated facts sufficient to constitute a cause of action.

3. *Contract with Deceased—not Admissible in Action by Administrator.*

    Where, in an action brought by plaintiff as Administrator of estate of one S. deceased, defendant sought to prove a verbal contract made between himself and the deceased, during his lifetime, his testimony was properly excluded by the court, under Mansf. Dig. Sec. 2857 (Ind. Ter. Stat. Sec. 1972) which provides that in actions by or against administrators neither party shall be allowed to testify against the other as to any transactions with or statements of the intestate unless called to testify thereto by the opposite party.

4. *Statute of Frauds—Invoked Only by Parties or Privies.*

    Certain of the plaintiffs derived their interest in the premises in controversy from a transfer to them by the deceased, whose administrator joined in the suit, during his lifetime. It was proper for these plaintiffs to establish this sale by

their verbal testimony, for the Cherokee laws do not require such transfers to be in writing, and as the administrator was not contesting this plaintiff's rights, but joined in the action, asserting a joint possessory right, defendant not being a party or privy to this contract cannot invoke the statute of frauds and have same excluded because not in writing.

5. *Cherokee Laws—Widow Has the Title Until Delivery by Administrator.*

The court below properly excluded evidence of a contract made by defendants with the widow of the deceased, one of the plaintiffs, because the contract sought to be proved was not in writing, and related to an occupancy of lands for more than a year; and also because the widow could have no title to or control over the property of her deceased husband until the administrator had recovered the possession thereof, and delivered same to the widow, under Comp. Laws Cherokee Nation, Sec. 493 and 504, which provides that every administrator shall assume all the relations of the deceased person upon whose estate he may have obtained letters and shall prosecute and defend all suits at law instituted on behalf of or against the deceased; and shall, in the administration, turn over all property to the surviving parent for the use of the family.

6. *Parties—All Persons Interested in Action are Proper.*

Under Mansf. Dig. Sec. 4039 (Ind. Ter. Stat. Sec. 3144) which provides that "all persons having an interest in the subject of an action, and in obtaining the relief demanded, may be joined as plaintiffs, the widow of the deceased, and a joint owner were both proper parties to a suit brought by the administrator of the deceased to recover possession of the land owned by them jointly.

7. *Ejectment—Tenants Cannot Deny Landlord's Title.*

An instruction was proper which directed the jury that if the defendants, while in possession of the lands in controversy under a lease agreement with an Indian citizen then deceased, denied the title of the administrator of such deceased when he demanded possession of the lands and set up an independent title in themselves, they forfeited all rights to the possession of said lands.

8. *Cherokee Laws—Quarter Mile Limit Adjacent to Improvement.*

Where an administrator brought suit to recover the possession of certain lands, claiming to be entitled to the possession thereof by virtue of certain improvements made by the intestate within the one-quarter mile limit as provided in the Cherokee laws, and the evidence shows that the intestate sold the original improvement but afterward made another improvement within the required limit, and in the sale of the former reserved the right to the quarter-mile limit, the contention that the right to possession of the surrounding quarter-mile limit was abandoned by the first sale, is without merit, and constitutes no defense to the action by the administrator.

9. *Verbal Contract of Lease—Excluded by Statute of Frauds.*

Defendants sought to base a defense to an action to recover possession of lands held by them, upon a verbal contract with the deceased owner of said lands, by which defendants were to retain possession of same for a period of years. *Held*, such contract could not be proven, being expressly excluded by the statute of frauds, Mansf. Dig. Sec. 3371 (Ind. Ter. Stat. Sec. 2305).

10. *Complaint—Failure to Plead Cherokee statutes—Sufficient.*

Plaintiff claimed possession of certain lands in the Cherokee Nation under rights given by the Cherokee statutes. In his complaint such statutes were not plead, nor were they proved on the trial. *Held*, that under Mansf. Dig. Sec. 5083 (Ind. Ter. Stat. Sec. 3288) which provides that the court must, in every stage of the action, disregard any error or defect in the proceedings which does not affect the substantial rights of the adverse party, and that no judgment shall be reversed or affected by reason of such error or defect, the defect in the complaint, if any, was cured by the evidence and the verdict, and as no substantial right of defendant was affected adversely thereby, the judgment should not be reversed.

Appeal from the United States court for the Northern district.

(30)

WILLIAM M. SPRINGER, Judge.

Action by O. A. Smith and others against Eli James
and another. Judgment in favor of plaintiffs. Defendants
appeal. Affirmed.

This was an action of ejectment, brought by plaintiffs
below, appellees here, against the defendants below, appel-
lants here, to recover the possession of a tract of land esti-
mated to contain 10 acres, lying in Delaware district, Chero-
kee Nation, just south of Fairland. The plaintiffs allege
that O. A. Smith is the administrator of John J. Smith, de-
ceased, appointed by the district judge of Delaware district,
Cherokee Nation; that, by virtue of the Cherokee law, said
Smith "thereby assumed all the relations of the deceased,
and succeeded to the rights of said John J. Smith; that, by
virtue of the Cherokee law, it became and was the duty of
the said administrator to deliver to the widow of said John
J. Smith all the improvements of the said John J. Smith,
together with all the rights belonging to said improve-
ments;" that the plaintiff Catherine Smith was the widow
of John J. Smith, and was entitled, under the Cherokee law,
to the possession of the land of her deceased husband; that
William Howell, plaintiff, and John J. Smith, at the time
of his death, were the owners and entitled to the possession
of the land sued for; that said land was a part of the Chero-
kee public domain, and that, by virtue of the laws regulat-
ing the settlement of said public domain, the said parties·
were entitled to the possession of the said lands, and, by
"sufferance of John J. Smith and William Howell, defend-
ants lived on said lands"; and, by amendment to their com-
plaint, plaintiffs allege: "The said John J. Smith and Wm.
Howell had and owned improvements thereon sufficient to
establish a claim upon the public domain of the Cherokee
Nation, and upon the one-quarter of a mile limit surround

ing the same." The defendants filed a demurrer, which was
overruled by the court; then answered, denying all the al-
legations of complaint; and on the 2d of March, 1897, moved
for continuance, but the record does not disclose what action
if any, the court took on said motion. On March 9, 1897,
defendants filed motion to make the complaint more specific,
and on March 11th the amendment to the complaint, herein-
before stated, was filed by plaintiffs, and on March 16th the
case was tried by a jury, and verdict for plaintiffs for pos-
session of the land. Defendants moved for new trial, which
being overruled by the court, defendants appealed to this
court.

*M. M. Edmiston,* for appellants.

*G. B. Denison* and *W. H. Kornegay,* for appellees.

TOWNSEND, J. The appellees call attention to the
fact that appellants have not complied with rules 9 and 10
of this court, and, had appellees filed a motion to dismiss
the appeal as provided in paragraph 5 of rule 10, this court
would dismiss the appeal in this case. The only papers
filed are a transcript and the brief of appellees. There is
found with the papers an abstract and brief for appellants
combined, but not filed, and this contains the only argument
made by appellants, and seems to be the only paper to which
appellees made answer in their brief. It contained no
specification of errors. There is also found another paper,
marked a brief of appellants, not filed, however, nor con-
taining any argument whatever, but does set out what pur-
ports to be 11 specifications of error; but the same could not
have been furnished to counsel for appellees, as they state
in their brief that appellants had filed no assignment of
errors, as the rule of this court requires. The specifica-
tions of error set out, however, are not in the order in which

appellants argue the questions in their abstract and brief, and which appellees sought to answer. The result is confusion, and is a practice that cannot be too strongly condemned. The argument of appellants is addressed to eight separate propositions, but at its close the appellants' counsel especially calls the attention of the court to five propositions embraced in his argument as being the chief questions upon which he relies, and yet in his entire argument not a specific assignment of error is set out, but each proposition is a mixture of alleged error and argument.

Pleading.
Complaint.

The first proposition is that the complaint does not state sufficient facts. The transcript shows that the original complaint was filed on the 1st day of May, 1896, to which appellants, on the 8th day of October, 1896, filed a demurrer "for the reason the same does not state facts sufficient to constitute a cause of action." This demurrer was argued and overruled by the court on the 12th day of October, 1896, and defendants were given 10 days in which to file answer. On October 22, 1896, defendants filed their answer, and on March 2, 1897, defendants filed a motion for continuance. What disposition was made of said motion does not appear. On March 9, 1897, defendants filed a motion to require plaintiffs to "make their complaint more specific, definite, and certain, by stating by what title or right they assert ownership of improvements on the lands in controversy." On March 11, 1897, plaintiffs filed an amendment to their complaint as set out in statement of facts, supra. On March 16, 1897, both parties announced ready for trial, and the case was tried, resulting in a verdict for plaintiffs for the possession of the property in controversy. The defendants did not demur to the complaint as amended. Appellants cite section 2632, Mansf. Dig. (section 1916, Ind. T. Ann. St. 1899), to show complaint was insufficient. Said section is as follows:

"Sec. 2632. In all actions for the recovery of lands, except in actions of forcible entry and unlawful detainer, the plaintiff shall set forth in his complaint all deeds and other written evidences of title on which he relies for the maintenance of his suit, and shall file copies of the same as far as they can be obtained, as exhibits therewith, and shall state such facts as shall show a prima facie title in himself to the land in controversy, and the defendant in his answer shall plead in the same manner as above required from the plaintiff."

This section simply requires the parties to set forth their deeds and other evidences of title. But, in determining the sufficiency of a complaint, it is held, in Howell vs Rye, 35 Ark. 470, "that the court, in considering * * * the demurrer to the complaint, could only look at its allegations, and see if they made a good cause of action and could not look at the deeds, exhibited with the complaint." In Ball vs Fulton Co., 31 Ark. 379, it is held: "If the complaint omits to state a fact which is essential to the cause of action objection should be taken by demurrer; if it state the necessary facts in a defective, uncertain manner, objection should be taken, by motion, to make more definite." This seems to be the course appellants took in this case. If appellants were satisfied that the complaint omitted facts essential to the cause of action, they should have stood upon their demurrer; but by filing their answer, and moving to have the complaint made more specific, definite, and certain, and, after amendment, failing to demur or take other steps, and announcing ready for trial and trying the case, it is too late, after verdict, to question the sufficiency of the complaint on their motion for new trial or in this court.

But was the complaint insufficient? The original complaint set out how O. A. Smith and Catherine Smith succeeded to the rights of John J. Smith, and that John J.

Smith and plaintiffs were all citizens of the Cherokee Nation. It goes further, and alleges that the lands in question were part of the public domain of the Cherokee Nation, but that John J. Smith and William Howell, by virtue of the laws of the Cherokee Nation regulating the settlement of the public domain, were entitled to the possession of the lands, and that defendants, by sufferance of these parties, lived on the lands. It alleged a demand on February 28, 1896, for possession, and refusal and denial of plaintiff's title. The amendment, by interlineation, showed that Smith and Howell owned improvements within a quarter of a mile. In Fagg vs Martin (Ark.) 14 S. W. 647, an Arkansas case, it is held "that a complaint in ejectment which avers plaintiff's ownership and defendant's possession is sufficient"; and in Stafford vs Watson, 41 Ark. 21, it is held that, "both parties claiming under the same right, the plaintiff was not bound to trace back his title beyond the common origin, unless the defendant showed some title in himself aliunde,"—citing many authorities to sustain the proposition. In the case at bar O. A. Smith is the administrator of J. J. Smith, deceased, under whom the defendants entered. Hence there were no deeds or transfers to be set out, under section 2632, Mansf. Dig. (section 1916, Ind. T. Ann. St. 1899). Besides, titles in the Cherokee Nation are not required to be in writing, as between citizens. Yet if the complaint was defective, it was cured by the proof and the verdict. "When an imperfect pleading is not demurred to, and the proof supplies its defects, the pleading is to be considered as amended to conform to the proof and support the verdict." Healy vs Conner, 40 Ark. 352. See, also, Railway Co. vs Triplett (Ark.) 16 S. W. 266; Hanks vs Harris, 29 Ark. 323.

The second proposition stated by appellants is that the court erred in not granting a continuance. There does not appear in the record any action by the court on the mo-

tion for continuance, nor any exception saved to any action on that motion, and hence it cannot be considered in this court.

The third proposition stated by appellants is that the appellants should have been permitted to prove a verbal contract made between Eli James, one of the appellants, and J. J. Smith, deceased, in his lifetime; this being an action by O. A. Smith, administrator of J. J. Smith, deceased, and others against James and his wife. This testimony was objected to by the appellees, and was properly excluded, under section 2857, Mansf. Dig. (section 1972, Ind. T. Ann. St. 1899), which is as follows:

Verbal contract with deceased. Inadmissible.

"Sec. 2857. In civil actions, no witness shall be excluded because he is a party to the suit or interested in the issue to be tried: provided, that in actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transactions with or statements of the testator, intestate, or ward, unless called to testify thereto by the opposite party; provided, further, that this section may be amended or repealed by the general assembly."

Appellees also objected to appellants proving said contract unless the same was in writing, it being for an interest in lands, and the proof showing that James went on the lands in 1891. Appellants insist that, if the statute of frauds can be invoked against them, it should also obtain as to the sale between J. J. Smith, deceased, and appellee Howell, and that the testimony of Howell and Payne should not have been admitted, because it tended to show a transfer from Smith to Howell of an interest in lands without writing. Smith and Howell were Cherokee citizens, and the Cherokee law did not require such transfer to be in writing, and, besides, O. A. Smith, administrator, and

Statute of frauds. Invoked only by parties to contract.

Catherine Smith, who joined with Howell in this action, are not contesting Howell's rights in the matter. The appellants were not parties to the contract between J. J. Smith in his lifetime and Howell, and the defense of the statute can only be made by parties to the contract or by. their privies. 9 Enc. Pl. & Prac. p. 703. But, when appellants seek to prove a contract with appellees for an interest in lands, the latter have the right to invoke the statute, and have same excluded, unless it is in writing.

The fourth proposition stated by appellants is that Catherine Smith, widow of the deceased and one of the appellees, cannot object to a conversation had by her with one of the appellants. Mrs. Catherine Smith was not called as a witness by either appellants or appellees, and the objection was made by the appellees to a question propounded to Eli James, one of the appellants, as follows: "Q. I want to ask you if you had any agreement or contract with Mrs. Smith in reference to the settlement of this land in question, —your occupancy there." Appellees objected -- First, unless the contract was in writing; and, second, upon the ground that title of Mrs. Smith had not accrued. The first objection was good, unless the writing was produced, as the occupancy had continued from 1891, and the appellants made no attempt to prove any written contract. The second objection went to the title or interest Mrs. Smith had under the Cherokee statute, which statute appellees had introduced in evidence from the compiled Laws of the Cherokee Nation, and is as follows:

"Sec. 493. Every administrator and executor shall assume all the relations of the deceased person upon whose estate he may have obtained letters, and none other. In all suits at law, instiuted by or against such deceased persons, such suit shall be prosecuted or defended, in every particular, as if no demise had occurred: provided, that, if at the

next term of the court, after the death of such person there is no administrator or executor of his estate appointed, the judge of the court in which such suit is there pending, shall continue the same to the terms following."

"Sec. 504. All improvements shall be exempted from the payment of debts against any estate, and in the administrations of estates where there is a surviving wife or husband, or minor child or children, all the property exempted by law from execution shall likewise be exempted from the payment of debts against an estate, and shall be at once turned over to the surviving parent or guardian for the use of the family."

It appears from this statute that the administrator or executor shall assume all the relations of the deceased person, and that all property exempted from execution shall be at once turned over to the surviving parent, etc. The administrator in this case found it necessary to recover possession before he could turn the property over to the widow, as was his duty under the statute to do, and until the possession had been delivered to her she could not contract concerning the land. Besides any admissions she might make would not bind the administrator or Howell, the other appellee, and, as evidence against them, any statements made by her were certainly inadmissible. Still she had an interest in the subject of the action and the relief demanded, and hence was a proper party, under the statute, Howell was also a proper party, having an interest. The statute of Arkansas (Mansf. Dig. § 4939; section 3144, Ind. T. Ann. St. 1899) upon this subject is as follows:

*Cherokee laws. Widow's title to estate.*

*Parties.*

"Sec. 4939 All persons having an interest in the subject of an action, and in obtaining the relief demanded, may be joined as plaintiffs, except where it is otherwise provided."

This disposes of the fifth proposition stated by appellants, which objects to the latter part of the second instruction given by the court, which says he might have an interest. The said second instruction is as follows: "If you find from the evidence that at the time the administrator, one of the plaintiffs in this case, qualified as administrator of the estate of John J. Smith, deceased, he found the defendants in possession of a portion of the public domain of the Cherokee Nation, which was within the quarter-mile limit of an improvement that had been held and occupied or owned by the said John J. Smith, deceased, in his lifetime, or any person claiming under him, and that the defendants were noncitizens of the Cherokee Nation, the said administrator had a right to demand that they surrender possession of the property now in controversy to him as administrator of the estate of the said John J. Smith, deceased, unless there is evidence satisfying your minds that the said John J. Smith had in his lifetime legally disposed of the same and, if the defendants refused to so surrender possession, he had a right to bring and maintain this action for the recovery thereof; and if you further find that the plaintiff William Howell, being a citizen of the Cherokee Nation, had obtained an interest in the said portion of the public domain in dispute in this case, your verdict should be for the plaintiffs."

The sixth proposition stated by appellants is that as they claim no title in the lands in controversy, the third instruction of the court was misleading, and, as there was no evidence tending to show they "set up an independent title in themselves," the fourth instruction of the court was wrong. The answer of appellants denies the title of appellees, and the proof was to the same effect. The court instructed the jury in the third instruction that, if the jury found from the evidence that appellants entered upon such possession under the said John J. Smith, deceased, or

Lessee claiming independent title forfeits right of possession.

cannot set up a claim or right in themselves to the said improvements against the said John J. Smith, deceased, or his heirs or privies in interest; and in the fourth instruction the court told the jury that while in possession under a lease agreement made between John J. Smith, deceased, and appellants, and upon demand being made by O. A. Smith, as administrator of John J. Smith, deceased, upon appellants, for surrender of possession of the premises, the appellants denied the title of said administrator, and set up an independent title in themselves, the law holds the appellants (defendants) by such denial, and setting up an independent title in themselves forfeited all rights to the possesion of the said lands, and the appellees (plaintiffs herein) or the representatives of the said John J. Smith became thereby entitled to the possession of the lands. We think both instructions were correct, and were applicable to the evidence in the case.

The seventh proposition stated by appellants is that appellees based their right to recover the tract of land in controversy by reason of the fact that the said tract of land sued for in this action was within the quarter of a mile limit of a certain 200-acre farm, which farm John J. Smith sold before his death. But such is not the allegation of the complaint. The complaint alleges ''that the said tract of land formed part of the Cherokee public domain, but that by virtue of the laws of the Cherokee Nation, regulating the settlement of the public domain, the said parties, the said John J. Smith and William Howell had and owned improvements thereon sufficient to establish a claim upon the public domain of the Cherokee Nation, and upon the one-quarter of a mile limit surrounding the same, and were entitled to the possession of the said lands, and by sufferance of John J. Smith and William Howell defendants [appellants] lived on said lands.'' There was evidence that Smith had owned improvements on a 200-acre

farm, but that he also owned other improvements on a smaller tract. Appellants insist that the fifth instruction was wrong and misleading. The said fifth instruction is as follows: "Although the jury may find that John J. Smith, deceased, in his lifetime, disposed of or sold the improvement, of which the premises in controversy were within the quarter-mile limit, yet if they further find that prior to such sale he had caused to be made an improvement upon the west border of the said quarter-mile limit, and in such sale of his improvements reserved such improvement upon the west border of the quarter-mile limit and the premises in controversy and some lots upon the quarter-mile limit immediately west of the west line of his improvement, then such reservation and such acts of improvement constituted an occupancy upon the quarter of a mile limit, and an additional improvement thereon, and the defendants cannot maintain their contention that the said Smith, deceased, had abandoned his quarter of a mile limit by the sale of his original improvements." We think, under the pleadings and proof in the record, the instruction was proper. The appellants were in possession of said tract of land by the sufferance of the appellees,—simply tenants,—and seek to retain possession by denying the title of appellees, when the appellees still owned the tract of land. We do not think there is any merit in this proposition.

The eighth proposition stated by appellants is that they attempted to prove a verbal contract under which they held (not claiming title); that the court sustained objections to this evidence; and therefore the sixth instruction should not have been given, as it was calculated to mislead the jury and prejudice their case. The sixth instruction is as follows: "If the jury believe from the evidence that defendants made contract with John J. Smith, by the terms of which defendants were to retain possession of the lands in controversy, and said lands were to belong to John J.

*(margin note:)* Cherokee law. Owner of improvements entitled to quarter mile limit.

Smith, such contract would be void as far as allowing defendants to retain possesion of said lands is concerned; and, if you believe demand for the delivery of possession of the land in controversy was made by the legal representatives of John J. Smith before bringing this suit, defendants cannot rely upon the said contract as a defense to this suit."

The contract sought to be proven was properly excluded, under the statute of frauds. The fourth and fifth paragraphs of said statute (section 3371, Mansf. Dig. section 2405 Ind. T. Ann. St. 1899,) are as follows:

Statute of frauds. Excludes verbal contract.

"Sec. 3371. No action shall be brought: * * *

"Fourth. To charge any person upon any contract for the sale of lands, tenements or hereditaments, or any interest in or concerning them.

"Fifth. To charge any person upon any lease of lands, tenements or hereditaments for a longer term than one year, * * * unless the same is in writing," etc.

It is insisted by appellants that it was necessary to plead and prove the Cherokee statutes, and, by reason of the failure so to do, the case should be reversed in this court. The statute of pleadings and practice (section 5083, Mansf. Dig., section 3288, Ind. T. Ann. St. 1899), provides as follows:

Pleading. Defects incured by evidence and verdict.

"Sec. 5083. The court must, in every stage of an action, disregard any error or defect in the proceedings, which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

If the complaint was defective, this was cured by the evidence and verdict. See Healy vs Conner, 40 Ark. 352,

and other cases cited supra.    We think  the judgment of the court below was correct, and it is  therefore affirmed.

CLAYTON, C. J., and THOMAS  and  GILL,  JJ., concur.