2017 Ark. App. 671

**BAPTIST HEALTH MEDICAL CENTER, Appellant**

v.

**FIRST COMMUNITY BANK OF BATESVILLE and Estate of William Scott Mueller, Appellees**

No. CV–17–62

Court of Appeals of Arkansas, DIVISION I.

Opinion Delivered December 6, 2017

Wright, Lindsey & Jennings LLP, Little Rock, by: David P. Glover, Gary D. Marts, Jr., and David C. Jung, for appellant.

Jon R. Sanford, P.A., by: Jon R. Sanford, Russellville, for appellee First Community Bank.

Dugger Law Firm, P.A., by: Terry Dugger; Little Rock, for appellee William Scott Mueller.

Brian G. Brooks, Attorney at Law, PLLC, by: Brian G. Brooks, for appellees.

LARRY D. VAUGHT, Judge

Appellant Baptist Health Medical Center (BHMC) appeals the Pope County Circuit Court's denial of its motion to vacate the court's previously issued guardianship order appointing First Community Bank of Batesville (the Bank) as the guardian of William Scott Mueller's estate for the purpose of prosecuting a medical-negligence action on his behalf and managing any assets obtained therefrom. BHMC claims that deficiencies in the original guardianship petition rendered the guardianship void ab initio. We disagree and affirm.

Mueller was severely injured in a motor vehicle accident on June 21, 2012. He was treated at BHMC. Mueller was rendered a quadriplegic, and on July 11, 2012, Mueller executed a durable power of attorney to Amanda Chavers. Chavers then engaged an attorney to prosecute Mueller's personal-injury claims. On May 29, 2014, Chavers petitioned the circuit court for an order appointing the Bank as permanent guardian of Mueller's estate for the sole purpose of prosecuting a medical-negligence action on his behalf and managing any assets obtained therefrom. The petition alleged that Mueller was incapacitated by virtue of his quadriplegia. Attached to the petition was a life-care plan prepared by Tanya Rutherford Owens, a certified life-care planner and rehabilitation counselor.

The court granted the guardianship petition, and the Bank was then substituted as the plaintiff in the medical-negligence suit. During the medical-negligence trial, Mueller testified that he was the primary caregiver for his young son and handled his own finances, which prompted BHMC to challenge the Bank's standing as guardian, arguing that Mueller was not incapacitated and that the guardianship was invalid. The Bank voluntarily nonsuited the medical-negligence action before it was submitted to the jury.

In March 2016, BHMC moved to intervene in the probate case in order to challenge the validity of the guardianship. In its motion to vacate the court's February 26, 2015 guardianship order, BHMC argued that (1) the original order was not supported by an oral or sworn written statement by a "qualified professional" as that term is defined in the probate code; (2) pursuant to the trial testimony of Mueller and Chavers in the medical-negligence case, Mueller was not "incapacitated"; and (3) there was no evidence that a proper medical evaluation had been conducted before the appointment of a guardian.

In response, the Bank filed an amended guardianship petition and attached the report of Dr. Kristi Ketz, a licensed psychologist. The amended petition provided that Mueller and his sister agreed that the guardianship should be continued. On April 22, 2016, the court entered an amended guardianship order, again appointing the Bank as Mueller's guardian. The amended order indicated that there had been a hearing on the amended petition and that BHMC had been present, although the court had not yet ruled on its motion to intervene.[1]

On July 27, 2016, Mueller filed a motion to terminate the guardianship, claiming that it was no longer necessary. On August 17, 2016, the court held a hearing on BHMC's motion to vacate the original guardianship order and Mueller's motion to terminate the guardianship. The circuit

---

1. On June 24, 2016, the circuit court held a hearing on BHMC's motion to intervene and subsequently granted its request for intervention, both as a matter of right and permissively.

court orally granted the motion to terminate and denied the motion to vacate. An order granting the motion to terminate the guardianship was filed on August 31, 2016. No appeal was taken from this order.

An order denying BHMC's motion to vacate the original guardianship order was entered on October 21, 2016. That order stated that the original guardianship order was voidable, rather than automatically void, due to deficiencies in the original petition seeking the appointment. of a guardian. The order noted that Dr. Tanya Owen, author of the life-care plan attached as supporting evidence for the original petition, lacked the necessary qualifications required by Arkansas Code Annotated section 28–65–101(8) (Repl. 2012). The court's order then stated that the amended guardianship petition, which met the statutory requirements, cured the deficiencies in the original petition and that the amended order "relates back" to the time that the original petition was submitted. The order further held that any actions taken by the Bank as guardian in reliance on the original order were valid from the date of the original appointment. BHMC appeals from this order.

▐ |₄We review probate proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Donley v. Donley*, 2016 Ark. 243, at 6, 493 S.W.3d 762, 766 (citing *Graham v. Matheny*, 2009 Ark. 481, 346 S.W.3d 273). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* at 6, 493 S.W.3d at 766. When reviewing the proceedings, we give due regard to the opportunity and superior position of the circuit court to determine the credibility of the witnesses. *Id.* at 6, 493 S.W.3d at 766. However, we give no deference to the circuit court on matters of

law. *Freeman v. Rushton*, 360 Ark. 445, 202 S.W.3d 485 (2005).

▐ It is undisputed that the original petition failed to meet the statutory requirements · for obtaining a guardianship. BHMC argues that, as a result, the court's original guardianship order was void ab initio and that the court therefore erred in denying BHMC's motion to vacate. BHMC relies on *Wilson v. Beckett*, 95 Ark. App. 300, .236 S.W.3d 527 (2006), and *Poe v. Case*, 263 Ark. 488, 565 S.W.2d 612 (1978), for the proposition that an order issued in excess of the court's statutory authority is void. At oral .argument, BHMC's counsel made clear that this was an argument about the circuit court's jurisdiction to issue the original guardianship order, asserting that the petition's deficiencies meant that the court lacked jurisdiction to issue the order. We disagree. The law has long recognized · a difference · between · a lack of jurisdiction and the·erroneous exercise of jurisdiction. *See, e.g., Cato v. Craighead Cty. Circuit Court*, 2009 Ark. 334, at 5, 322 S.W.3d 484, 488 (citing *Erin, Inc. v. White Cty. Circuit Court*, 369 Ark. 265, 268, 253 S.W.3d 444, 446 (2007)). Moreover, in other cases in which we have found that the statutory requirements for obtaining a guardianship were not met, we have |₅reversed rather than dismissed for lack of jurisdiction, indicating that a deficiency in the evidence presented to obtain the guardianship order does not strip the court of jurisdiction. *See Autry v. Beckham*, 2014 Ark. App. 692, at 7, 450 S.W.3d 247, 251.

Here, it is undisputed that the circuit court had jurisdiction over the parties and subject matter at issue in this case, and BHMC has provided us no persuasive argument or authority as to why the guardianship petition's acknowledged· deficiencies should be treated as a jurisdictional bar. As a result, we see no error in the

circuit court's determination that the original guardianship order was simply voidable rather than void ab initio.

■ BHMC's next argument is that, if voidable rather than void ab initio, the original guardianship order should have been vacated. In its order denying BHMC's motion to vacate, the circuit court found that the original guardianship petition lacked the necessary statutory qualifications for obtaining a guardianship. It then found that the amended petition met all statutory requirements, that it "relates back to the date of the original pleading, pursuant to Ark. R. Civ. P. 15," and that the amended petition "effectively addresses and cures any deficiencies in the guardianship appointment." It goes on to state that "any and all actions taken by [the guardian] in reliance on this Court's orders were and are hereby declared valid from the date of appointment until the termination of the guardianship on August 31, 2016."

■ BHMC argues that the circuit court's reliance on Rule 15 of the Arkansas Rules of Civil Procedure was misplaced because a petition for the appointment of a guardian is not a "pleading" as designated by Rule 7(a). We agree that the amended petition and second order appointing guardian could not "cure," by means of relation back, the shortcomings of the first petition. However, we note that the erroneous relation-back language is not the only basis the court provided for denying BHMC's motion to vacate.

First, the court found that the amended guardianship petition sufficiently addressed the shortcomings of the original petition. Dr. Kristi Ketz's supplemental professional-evaluation form specifically stated that, in her professional opinion, after reviewing the case file and examining Mueller, the original guardianship "was appropriate and necessary when established" and "should be continued." BHMC relies on *Pope v. Pope*, 213 Ark. 321, 210 S.W.2d 319 (1948), and *Lord v. Mazzanti*, 339 Ark. 25, 29, 2 S.W.3d 76, 79 (1999), for the proposition that a court may not issue a *nunc pro tunc* order to cure fatal, substantive defects in a previous order. BHMC argues that *nunc pro tunc* orders are appropriate to remedy clerical errors but not to address substance. This line of analysis is misplaced, however, because the circuit court's order we are tasked with reviewing in this appeal was the denial of a motion to vacate, not an order purporting to retroactively amend the initial guardianship.

Second, the circuit court's order denying BHMC's motion to vacate was also based on the Bank's reliance on the previous guardianship order. This consideration is especially pertinent because the relevant guardianship statute, Arkansas Code Annotated section 28-65-216, specifically mandates that "The letters, when so issued, until revoked or cancelled by the court, shall protect persons who, in good faith, act in reliance thereon." Ark. Code Ann. § 28-65-216.[2] While the validity and effect of the Bank's prosecution of the underlying medical-negligence claim on Mueller's behalf are matters to be decided in the medical-negligence case and are not before us in this appeal, we recognize that the circuit court could properly consider

---

**2.** Additionally, our appellate courts have repeatedly applied similar language in Arkansas Code Annotated section 28–11–115 to uphold the actions of personal representatives even when the appointment of such representatives was subsequently found to be statutorily deficient and the representatives removed. *In re Estate of L.C. Taylor v. MCSA, LLC*, 2013 Ark. 429, 430 S.W.3d 120; *See also Taylor v. MCSA, LLC*, 2013 Ark. 430, 430 S.W.3d 113 (companion case); *Nickles v. Wood*, 221 Ark. 630, 255 S.W.2d 433 (1953).

the statute's explicit intent to preserve and validate the actions taken by a guardian when deciding whether to vacate the original order. Given the fact that the original guardianship order was voidable but not void ab initio, and given the unique statutory preference for preserving the validity of actions taken by guardians in circumstances such as this, we see no error in the court's denial of BHMC's motion to vacate based on its finding that the amended guardianship petition provided sufficient evidence to address the shortcomings of the original petition.

Affirmed.

Klappenbach and Whiteaker, JJ., agree.